## THE PALMER COMPANY, Petitioners, *versus* ISAAC FERRILL.

Certiorari lies to the Court of Common Pleas to revise their proceedings in the case of a complaint by the owner of land against a mill owner for flowing the land, except in the particular cases mentioned in *St.* 1797, *c.* 63, § 2, in which an appeal is given.

On a complaint against a mill owner, for flowing the complainant's land by means of a dam erected in 1825, the parties agreed before the sheriff and jury, not to go back further than 1820, in their inquiries in relation to the condition and produce of the land ; the respondents nevertheless offered in evidence the deed of the land to the complainant, dated in 1816, to prove the value at that time, and further offered to prove that in 1825 the land was in the same condition as in 1816. *Held,* that the deed was inadmissible, as being irrelevant, and also as being excluded by the agreement.

The owner of land a part of which is flowed by means of a mill-dam, may, by reason of the situation of the part flowed in relation to the other part, sustain damages beyond the value of the land actually flowed, and on a complaint for flowing he may produce evidence to prove the full extent of the damage.

On such a complaint the respondent cannot give in evidence by way of set-off to the damage done to the land flowed, the consequential benefits resulting to the complainant from the erection of the dam, by reason of an increase of population, markets, schools, stores, and other improvements in the vicinity.

But the proper rule *seems* to be, to estimate the pecuniary loss arising to the proprietor from the direct injury done to his land taken as a whole, *by flowing,* deducting therefrom any benefit which may be done to the same land by the same cause, namely, *by flowing.*

In assessing the annual damages on such a complaint, regard is to be had, not to the condition of the land as it may have been affected by maintaining the dam several years preceding the date of the complaint, but to the condition of the land at the commencement of the injury, and as if no dam had been erected.

PETITION for a certiorari to the Court of Common Pleas of the county of Hampden.

The petition sets forth, that at a term of the Court of Common Pleas, held in February 1833, Ferrill presented his complaint against the Palmer Company, for flowing certain lands of the complainant, by means of the erection of a dam for the operation of a manufactory and mills of the respondents at Three Rivers, in the town of Palmer ; and that at a term held in June 1834, the sheriff returned into that court the verdict of a sheriff's jury, to which the respondents excepted, because the sheriff admitted evidence, against the objections of the respondents, and rejected evidence offered by them.

The respondents offered in evidence before the jury, a deed from one Knight to the complainant, dated in November 1816, to prove that the value of the land described in the deed was $15, that sum being the consideration mentioned in the deed ; and they further offered to prove, that when the dam was raised in November 1825, the land was in the same condition as when it was purchased by the complainant, and that the price of land situate like the lot in question has diminished since 1816, this lot being part of the tract described in the complaint.  The complainant objected to the admission of this evidence, on the ground that in the course of the trial, at the suggestion of the counsel for the respondents, it was agreed that the year 1820 should be fixed as the limitation of time beyond which the parties would not extend their inquiries in relation to the condition and produce of the tract of land described in the complaint.  It was ruled by the sheriff, that this evidence was inadmissible, generally, and likewise under the foregoing agreement of counsel, but that the value of the land in 1820, and since, might be proved by witnesses.   To this ruling the respondents excepted.

The complainant offered evidence to prove the damage done to the land flowed as connected with his other lands, was greater than its market value.   To this evidence the respondents objected, but it was admitted.

The respondents offered to prove as a set-off to the damages claimed, that the tract of land belonging to the complainant, and of which the land flowed is a part, has been greatly benefited by the erection of the dam and by the manufactory and mills ; that this benefit results from the increased population and improvements in the vicinity of the tract, occasioned by the operations of the manufactory and mills, and that in consequence thereof the tract and every part of it can be sold more readily and at a higher price, and all the products of the tract command a readier market and a higher price, than they would if the dam had not been erected, or if the dam were to be removed.

The respondents offered further to prove, that by reason of the erection of the dam, manufactory and mills, and the consequent increase of population and improvements, the

Palmer Co
v.
Ferrill

Palmer Co.
*v.*
Ferril.

complainant is greatly benefited by obtaining thereby a readier access to mills, schools, stores and mechanics' shops, and his situation in other respects rendered more eligible than it would have been had the dam never been erected or if it were removed.

It was ruled by the sheriff, that evidence was admissible to prove any benefit to the tract belonging to the complainant, of which the land flowed is a part, by reason of the erection of the dam, but that evidence was not admissible in relation to consequential benefits from the manufactory, mills, increased population and improvements in the vicinity of the tract, nor in relation to consequential benefits resulting to the tract, or any part of it, either in reference to the price or the products of the tract, readier market, schools, stores, mechanics' shops, or the complainant's situation in other respects being more eligible than it would have been had the dam never been erected or were removed. To this ruling the respondents excepted.

It was in evidence, that the dam was erected in November 1825, and has been kept up ever since. The respondents contended, that in assessing the annual and gross damages regard should be had to the situation of the land as it had been affected by the erection and maintenance of the dam from 1825 to the date of the complaint, and that the value and state of the land as it was at the commencement of the injury as set forth in the complaint, namely, on October 17, 1831, should be the measure of damages, and that the situation of the land as it existed previously to the erection of the dam, should not be the measure of damages. It was ruled by the sheriff, that in estimating the damages, regard should be had to the state and condition of the tract belonging to the complainant, as if no dam had been erected, and not to the actual state and condition of the land at the date of the complaint; both parties having introduced evidence showing the actual condition of the land from 1820 to the time of the trial. To this ruling the respondents excepted.

These several exceptions were overruled by the Court of Common Pleas.

The case was argued in writing.

*Wells* and *J. Stebbins*, in support of the petition, insisted on the several exceptions taken to the rulings of the sheriff. To the point that the deed to Ferrill ought to have been admitted in evidence, they cited *Commonwealth v. Sessions of Norfolk*, 5 Mass. R. 435. They contended that the petitioners were entitled to set off against the damage sustained by the complainant, the benefits resulting to him from the creation and prosperity of a manufacturing village in the vicinity of his land, — 1. On general principles, the damage to him being in fact only the amount of the injury after deducting the benefits, and what *ex œquo et bono* he is entitled to demand. *Bird* v. *Randall*, 3 Burr. 1353 ; — 2. Upon the decisions of this Court ; *Walcott W. Manuf. Co.* v. *Upham*, 5 Pick. 292 ; *Avery* v. *Van Deusen*, 5 Pick. 182 ; *Commonwealth* v. *Sessions of Norfolk*, 5 Mass. R. 435 ; *Commonwealth* v. *Coombs*, 2 Mass. R. 489 ; *Commonwealth v. Sessions of Middlesex*, 9 Mass. R. 388 ; *Callender* v. *Marsh*, 1 Pick. 418 ; and 3. By virtue of *St.* 1824, *c.* 153, § 3, which provides, that " when any jury shall be summoned under the said acts, to assess damages to any person, the jury may take into consideration, in their assessment, any other damage occasioned to such person, as well as the damage to the land overflowed, and in offset thereto (if any there be) any benefit which may result to the complainant by reason of the mill-dam complained of." As to the fourth exception, they said that the dam was erected by some one in 1825, and had been kept up until October 17, 1831, when, as the complainant alleges, the petitioners erected (in other words, applied) the dam, for the purpose of carrying on their works. The land, at that time had become deteriorated by being several years under water. The only injury done by the petitioners, was depriving the complainant of the benefit of cultivating the land flowed, during the period embraced in the complaint. If they had cut down their dam on October 17th, they would not have been liable to any action for that period. As however they kept it up, they can only be required to pay in damages a sum equal to the benefit which the complainant would have derived from the cultivation of the land in the state in which it was at the time. *Holmes* v. *Drew*, 7 Pick. 141.

Palmer Co.
v.
Ferrill.

Sept. 22d.

*R. A. Chapman* and *Ashmun*, for the complainant.

Shaw C. J. delivered the opinion of the Court. A question has occurred, whether a certiorari to the Court of Common Pleas in this case is a regular and proper proceeding ; it being clear that if such a judgment can be appealed from, its regularity cannot be inquired into, upon a certiorari. In one case under the acts for the regulation of mills, *St*.1797, *c*. 63, § 2, an appeal is allowed. It is where upon the filing of a complaint and notice issued thereon, the respondents appear and contest the complainant's title to the land, or right to claim any damage, and the parties join an issue, either in law or in fact, upon that question. The statute directs that such issue shall be tried in the Court of Common Pleas, with liberty to each party to appeal to the Supreme Judicial Court, as in other cases. The same statute, § 3, provides that if on such appeal, the determination shall be against the respondent, (in consequence of which further proceedings become necessary,) a certificate of such determination shall first be exhibited to the Court of Common Pleas, and then by force of the general provisions in the preceding section, such further proceedings are to be had in that court, as if no such appeal had been taken.

The appeal being given in this particular case only, the course of proceeding being not according to the course of the common law, but a peculiar process given and regulated wholly by statute, and no provision being made by these statutes for an appeal in any other case, the legal conclusion, we think, is, that no other judgments or determinations of the Court of Common Pleas under these statutes, are open to an appeal, and consequently a certiorari is the proper process, for revising these proceedings.

1. The first exception to the decisions of the sheriff at the hearing is, that he rejected the deed, under which the complainant purchased the land in 1816, which was offered with view of proving the price paid for the land, as one means of ascertaining the actual value of the land at the time mentioned in the complaint. We are of opinion that this evidence was properly rejected, under the agreement which the parties had entered into before the sheriff and the jury, which was, to

confine their evidence to a period not anterior to 1820. It is
insisted on the part of the respondents, that this agreement was intended to be confined to evidence of the condition of the land, as to the manner in which it was used by its owner, and its productive powers and capabilities. But supposing that the deed offered and rejected was competent evidence of the price paid, and this was proper evidence of the value of the land in 1816, it could not be brought to bear upon the question of its value in 1825 or 1832, without evidence of its condition in respect to its mode of occupation, its productive powers, which would be repugnant to the agreement. Indeed the offer of Knight's deed, to show the price paid in 1816, was accompanied by an offer to prove that the land remained in the same condition in 1825. We think therefore that this deed was rightly rejected.

2. The next exception involves the question, whether a complainant can, under any circumstances, sustain damage by reason of flowing, beyond the full market value of the land flowed. We think there can be no doubt that a person whose land is flowed, may and often does sustain damage beyond what the parcel of land flowed would sell for. It is in general true, that the land actually flowed ceases to be of any value to the owner, so that flowing occasions a damage equal to its whole value. But in addition to this, a tract of land may be so situated in relation to other parcels, as to occasion a damage much beyond the full value of the parcel actually flowed or injured by water. The argument urged against the admission of this evidence, goes, we think, to its weight and effect with the jury. Being competent evidence, we think it was properly admitted and left to the jury.

3. But by far the most material question in the present case arises from the offer of the respondents to prove, by way of set-off to the damage done by them to the complainant by flowing his land, the benefits resulting to him in the increased value of his land and that of the vicinity, by the erection of manufactories, and the consequences which may be presumed to result from them, in the increase of population, the establishment of schools, taverns, stores, banks, and all the usual incidents to the establishment of a manufacturing village, in a

district which was before exclusively or essentially agricul tural.

It was ruled at the hearing, that such evidence was not competent. The rule actually adopted was, that evidence might be admitted to prove any benefit to the tract of land belonging to the complainant, of which the land flowed was a part, by reason of the erection of the dam, but not in relation to the consequential benefits of the manufactory and mills, by reason of increased population and improvements in the vicinity, nor the consequential benefits arising from increase of markets, schools, stores, mechanics' shops, or the increased value, or more eligible situation of the complainant's other land.

The Court are of opinion, that this rule was correct, and carefully guarded and limited. The supposed benefits arising from the increased general prosperity to a settlement or tract of country, are too contingent, remote and indirect, to be brought into consideration in this question of damages to a particular parcel of land, arising from a particular cause. They are benefits, which the proprietor whose lands are flowed, enjoys, if he has them, in common with all those having lands so near, as to be influenced by this general prosperity. Besides, these are benefits, arising not directly and immediately from the building of a dam, and raising of a head of water, but from the application of capital, enterprise and industry, both of the proprietors of the mills, and others, who are attracted thither by their establishment. All the same consequences would ensue, from the establishment of steam manufactories, without any head of water. The supposed advantages to the land owner, are the result of a general state of prosperity and improvement, of which the erection of the particular dam and the establishment of manufactories in that particular situation, are at once the evidence, and in part the cause

Besides, the damages are given only for the injury done to the land by flowing, and any reduction or set-off to that damage, must consist of benefits arising from the same cause, that is, from flowing the land. No damage can be given for injury done to the land-owner's estate, except for flowing, by the

establishment of a manufacturing village, could it be shown
ever so clearly that actual damage would be occasioned by it.
If such an establishment were in point of law a nuisance, the
land-owner would have another remedy ; but if it should not
amount to a nuisance he would be without remedy. Any
injury arising from manufactures which would occasion nox-
ious smells, or uncomfortable noises, or other means of
annoyance to a neighbourhood by attracting a bad population,
increasing taxation, or causing pauperism and mendicity, can-
not be taken into consideration to enhance the damages in
favor of the person whose land is flowed. But the benefits
to be set-off must obviously be of the like kind with the
opposite injuries for which damages are sought.

Further, the law authorizing a party to raise a head of
water by means of a dam upon his own land, for his own ben-
efit, notwithstanding it may flow the land of his neighbours,
does indeed permit this only in cases, where it is necessary to
the working of a mill, (*St.* 1795, *c.* 74, § 1,) but it does not
distinguish between one species of mill and another ; and the
same rule and measure of damages is given, whether the head
of water be applied to the working of a saw-mill, which may
employ a few laborers, living at a distance, or to the working
of a cotton factory, which may employ a great many persons
constantly, and whose employment may naturally be presumed
to draw around it dwellinghouses, schoolhouses, taverns,
churches, banks, and other establishments ordinarily resulting
from the increase of population. In both cases, any person
who shall sustain damages in his lands, by their being flowed
as aforesaid, shall have the remedy given by the statute.

And the Court are of opinion, that the rule of damage and
set-off, so far as it applies to the present case, is not changed
by the statute of 1824, *c.* 153, § 3. This statute provides
that a jury may take into consideration, in their assessment,
any other damage, as well as the damage to the land over-
flowed, and in off-set thereto, if any there be, any benefit
which may result to the complainant, *by reason of the mill-
dam complained of.*

It is obvious, that as an immediate consequence of the
erection of a dam and raising a head of water, a land-owner

may sustain damage, besides the injury done to the land over-flowed ; as by obstructing his ways, cutting him off from convenient access to parts of his lands, disturbing the relations of one part to another ; and it is possible that he may in like manner receive benefits from the same cause, that of raising and flowing the water, by the irrigating and fertilizing an arid plain, giving him watering-places in dry pastures wherein he had none before ; and the statute puts it hypothetically, as a case which may, but which is not very likely to happen. We think it was for injuries and benefits like these, that this statute intended to provide, not probably to introduce any new substantive rule of law on the subject, but to declare and make explicit that which might before be regarded as doubtful or depending upon construction. The rule therefore which seems to be derived from the statutes construed together seems to be, to estimate the pecuniary loss arising to the proprietor from the direct injury done to his estate taken as a whole, *by flowing*, deducting therefrom any benefit which may be done to the same estate by the same cause, namely, *by flowing*. Considering this to have been the rule adopted at the trial, we think it was correct, and the exception to it cannot be sustained.

5. The last exception, we think, is equally untenable. The respondents contended, that in assessing the damages, regard should be had to the situation of the land at the time of filing the complaint against them, as it had been affected by main-taining the dam several years preceding the date of the complaint ; whereas it was held, that in estimating the damages, regard should be had to the condition of the land at the commencement of the injury and as if no dam had been erected. As a general rule we have no doubt that this was correct. If there were any particular and valuable improvements on the land, at the first erection of the dam, which were destroyed, this might require some exception to, or qualification of the rule. But to make the want of such exception or qualification a ground of exception, it should be shown that there was evidence tending to prove that there were in fact such valuable improvements on the land, when the dam was first erected But we understand, both from the exception itself and the

course of the argument, that the rule prescribed was, that the jury should assess by way of annual damage, so much as the improvement of the land would, in its ordinary state, be annually worth to the owner, had no dam ever been erected ; and this we think is the true general rule.

The doctrine insisted upon by the respondents, we apprehend, runs into distinctions and niceties too refined to afford the basis of a correct and useful practical rule.   The policy of the statute obviously is, to give the land-owner, whose land is flowed, a perpetual annuity, determinable by the termination of the dam, which is the cause of the damage, which annuity may vary from time to time, but which is to be regulated by determining what would have been the annual value of the land to its owner, considering the quality of the soil and generally its productive powers, if no dam had been erected. This annuity is, in effect, made a charge upon the estate, and must be paid by each successive mill-owner who shall come in place of a preceding one, if he shall continue to keep up the dam.   The deterioration of the soil, therefore, so far as it is the natural and necessary consequence of keeping up the water upon it, is not to be taken into consideration, to reduce the damage for him who comes in place of those who have thus kept up the water.   I do not perceive why the same argument might not be urged by the original mill-owner who raised the dam, after having been in possession several years. After having paid such annual damage, as a jury have assessed, for six years, he files a complaint for reducing them ; he shows what perhaps would be true, and what the argument in this case assumes to be true, that the grass on the land is all destroyed, the land is probably much covered with sand and gravel, and its fertility greatly decreased.   The mill-owner insists that he is only to pay for a given year, as much as the land-owner might have obtained for his land, if his dam had been prostrated at the beginning of that year, that is, if the head of water had not been kept up during that year.   We think the statute cannot be so construed.   It regards the whole continuance of the dam as an entire thing, and intends to give the land-owner, by way of damage, the same amount as he would have derived from its use and occupation, taken

Palmer Co.
v.
Ferrill.

in its ordinary condition, had no dam been erected. And without pursuing these illustrations further, we think the rule adopted was correct, and that the exceptions must be overruled.

*Petition dismissed.*